Steven A. Roseman, Esq., (SBN 163966)
Ryan A. Stubbe, Esq. (SBN 289074)
Robert M. Velasquez, Esq. (SBN 308790)
ROSEMAN LAW, APC
21550 Oxnard Street, Suite 300
Woodland Hill, CA 91367
Tel. 818.380.6700
Email: eserve@roseman.law

Attorneys for Plaintiff,
LIDO PARK PLACE CONDOMINIUM ASSOCIATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| LIDO PARK PLACE CONDOMINIUM ASSOCIATION, a California non-profit mutual benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>M/Y BOUNTY HUNTER, U.S.C.G. Official No. 97870, and all of her Engines, Tackle, Accessories, Equipment, Furnishings and Appurtenances, in rem; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR VESSEL ARREST, INTERLOCUTORY SALE AND FOR MONEY DAMAGES FOR:**<br>**1. BREACH OF MARITIME CONTRACT**<br>**2. TRESPASS**<br>**3. QUANTUM MERUIT** |

COMES NOW, Plaintiff LIDO PARK PLACE CONDOMINIUM ASSOCIATION, a California non-profit mutual benefit corporation, and by this Verified Complaint against Defendant M/Y BOUNTY HUNTER, all of her engines, tackle, accessories, equipment and appurtenances, *in rem*, alleges and pleads as follows:

**1**

G:\Shared drives\Active Clients A - M\Lido Park Place Condominium Association\lid100521.030 - v. Kuzmyak (UD Boat Slip Eviction)\Pleadings\Federal Court - Maritime FC\Complaint 03-28-2025 Maritime.docx

**VERIFIED COMPLAINT**

## PARTIES

1.     Plaintiff LIDO PARK CONDOMINIUM ASSOCIATION ("LIDO PARK") is now, and at all times herein mentioned, a California non-profit mutual benefit corporation. LIDO PARK operates and maintains a marina located at 621/633 Lido Park Drive, Newport Beach, California 92663 (the "Marina").

2.     Defendant M/Y BOUNTY HUNTER, United States Coast Guard Official No. 978700, and her engines, tackle, accessories, equipment, furnishings and appurtenances, etc. (the "VESSEL") is a 1990 Sea Ray Boat 310 Express Cruiser recreational motor yacht, bearing manufacturer hull number SERT1044J990, approximately 30.0 feet in length, owned and operated by Steve Kuzmyak. The Vessel is currently moored at slip number six (the "Slip") in the Marina in Newport Beach, California and is therefore located within this judicial District and the jurisdiction of this Court. On information and belief, STEVE KUZMYAK ("KUZMYAK") is the actual and ostensible owner of the M/Y BOUNTY HUNTER. A true and correct copy of the United States Coast Guard's Certificate of Documentation for the VESSEL is attached hereto as **Exhibit A** and incorporated herein by reference. A true and correct copy of the United State Coast Guard's General Index or Abstract of Title for the VESSEL is attached hereto as **Exhibit B** and incorporated herein by reference.

## JURISDICTION AND VENUE

3.     This is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h) and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. This claim is within the jurisdiction of this Court pursuant to the general maritime law, 28 U.S.C. § 1333, and 46 U.S.C. § 31342.

4.     The VESSEL is now and, on information and belief, will be during the pendency of this action present in navigable waters within this district and within the jurisdiction of this Court.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

**VERIFIED COMPLAINT**

## FIRST COUNT

### (Breach of Maritime Contract for Necessaries – Against All Defendants)

6.    On or about August 7, 2022, LIDO PARK and KUZMYAK, on behalf of and for the benefit of the VESSEL, entered into a Mooring Agreement ("Agreement"), a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein by this reference.

7.    Pursuant to the Agreement, LIDO PARK authorized KUZMYAK to moor the VESSEL in a slip at the Marina, in exchange for payment of a mooring fee of $1,800.00 per month in accordance with LIDO PARK'S rate schedule ("Mooring Fee"). A late fee of ten percent of the Mooring Fee would begin to accrue if the Mooring Fee is not received by LIDO PARK on the third day of the month in which it due. Ex. C, § 2.

8.    Notwithstanding repeated demands by LIDO PARK for payment of the maritime necessaries provided by LIDO PARK for the benefit of the VESSEL, she has failed and refused, and continues to fail and refuse, to do so. In addition, she has disregarded repeated demands of LIDO PARK and its counsel to produce evidence of the insurance required by the Agreement.

9.    On January 14, 2024, LIDO PARK sent KUZMYAK, as owner of the VESSEL, a Mooring Agreement and Payment Notice ("Notice") in which it stated that the Agreement had been terminated due to the delinquent account and requested that the VESSEL vacate the Slip as of January 31, 2024. A true and correct copy of the Notice is attached hereto as **Exhibit D** and incorporated herein by reference.

10.    Pursuant to the Agreement, if upon written notice of termination, the VESSEL fails to vacate the Slip on the termination date, then the monthly Mooring Fee shall increase to triple the monthly Mooring Fee during the time the VESSEL continues mooring in the Slip. *See* Ex. A., § 11.

G:\Shared drives\Active Clients A - M\Lido Park Place Condominium Association\lid100521.030 - v. Kuzmyak (UD Boat Slip Eviction)\Pleadings\Federal Court - Maritime FC\Complaint 03-28-2025 Maritime.docx

**VERIFIED COMPLAINT**

11.     Mooring Fees have continued to accrue since the date of termination of the Agreement on February 1, 2024, and the VESSEL'S account currently stands in arrears in the amount of $81,000.00 (through March 2025).

12.     LIDO PARK has fully satisfied all obligations required of it as a maritime services provider under the Agreement. LIDO PARK competently and without complaint provided the requested moorage services for the benefit of the VESSEL.

13.     Despite LIDO PARK'S demands to pay monies due and owing for maritime services provided for the benefit of the VESSEL, the VESSEL and her ostensible and apparent owner, KUZMYAK, have failed and refused, and they continue to fail and refuse, to pay sums necessary to satisfy LIDO PARK'S maritime lien in the above amount, which now encumbers the VESSEL.

14.     As a consequence of the foregoing, LIDO PARK has been damaged, through the date of this Verified Complaint, in a sum of not less than $81,000.00, plus additional mooring fees accruing through the date of arrest of the VESSEL, plus prejudgment interest, plus costs of suit (including attorneys' fees), no part of which has been paid by the VESSEL or KUZMYAK.

## **SECOND COUNT**

### **(Trespass - Against the In Rem Defendant)**

15.     PLAINTIFF refers to Paragraphs 1 through 14 inclusive, of this Complaint and incorporates them as though fully set forth herein.

16.     The Agreement executed by KUZMYAK permitted LIDO PARK to terminate the Agreement with or without cause, and accordingly, as a consequence of the habitual and present delinquency in payments of wharfage fees, LIDO PARK terminated the Agreement effective February 1, 2024, after LIDO PARK'S demands for payment were disregarded. Since that date, the VESSEL has failed to vacate from LIDO PARK'S Marina without LIDO PARK'S authority or permission.

**4**

G:\Shared drives\Active Clients A - M\Lido Park Place Condominium Association\lid100521.030 - v. Kuzmyak (UD Boat Slip Eviction)\Pleadings\Federal Court - Maritime FC\Complaint 03-28-2025 Maritime.docx

**VERIFIED COMPLAINT**

17.    Since February 1, 2024, the VESSEL has occupied a slip at LIDO PARK'S private premises without permission, authority or legal justification.

18.    The VESSEL has intruded onto and continue to intrude onto LIDO PARK'S premises, thereby invading and interfering with PLAINTIFF'S interest in the use, profits and enjoyment of its Marina.

19.    By reason of the foregoing, LIDO PARK has been damaged in an amount according to proof, but in any event in a sum, as of the date of this Verified Complaint, of not less than $80,000.00, plus additional mooring fees accruing through the date of arrest of the VESSEL, plus prejudgment interest, plus costs of suit (including attorneys' fees), no part of which has been paid by the VESSEL or her apparent and ostensible owner KUZMYAK.

## THIRD COUNT

### (Quantum Meruit - Against All Defendants)

20.    LIDO PARK refers to Paragraphs 1 through 19 inclusive, of this Complaint and incorporates them as though fully set forth herein.

21.    PLAINTIFF provided valuable mooring and other maritime necessaries to the VESSEL, for her benefit.

22.    Mooring and other maritime necessaries were accepted by the VESSEL and her actual and ostensible owner, KUZMYAK, and enjoyed by them.

23.    LIDO PARK had and has a rightful expectation of payment for these maritime services, but not been paid for them.

24.    Under the circumstances presented, not requiring payment for these services would result in the unjust enrichment of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays:

1.    That process in due form of law pursuant to this Court's Admiralty and Maritime Jurisdiction issue in rem against the VESSEL, and all of her engines, tackle,

G:\Shared drives\Active Clients A - M\Lido Park Place Condominium Association\lid100521.030 - v. Kuzmyak (UD Boat Slip Eviction)\Pleadings\Federal Court - Maritime FC\Complaint 03-28-2025 Maritime.docx

**VERIFIED COMPLAINT**

accessories, equipment, furnishings and appurtenances, and that all persons claiming any interest in the VESSEL be cited to appear and answer this Verified *in rem* Complaint;

2.      That Defendant's actual and ostensible owner, KUZMYAK, be cited to appear and answer this Verified Complaint;

3.      That LIDO PARK'S maritime lien be declared to be valid and subsisting in an amount not less than $80,000.00, plus additional mooring fees accruing through the date of arrest of the VESSEL, plus accrued interest and recoverable costs of suit, and that such lien is prior and superior to the interest, maritime and non-maritime liens or claims of any and all persons, firms or corporations whatsoever;

4.      That judgment be entered against the VESSEL, *in rem*, for LIDO PARK'S damages in a sum not less than 80,000.00, plus additional mooring fees accruing through the date of arrest of the VESSEL, together with interest thereon, and costs of suit herein, including attorneys' fees, and together with all other amounts which have been or are required to be disbursed by LID PARK for the care, insuring, preservation, storage and mooring of the VESSEL, and all other advances, expenses, fees, costs and disbursements by LIDO PARK, together with post-judgment interest at the maximum statutory rate.

5.      That the VESSEL, and all of her engines, tackle, accessories, equipment, furnishings and appurtenances, be condemned and sold to pay the demands and claims of LIDO PARK, with interest and costs, and that LIDO PARK may become a purchaser permitted to credit bid at any sale of the VESSEL any amounts adjudged to be owing to LIDO PARK;

6.      That, in the event a bond or other acceptable security is posted with the Court to effect the release of the VESSEL as permitted by the Supplemental Admiralty Rules, an Order issue requiring her immediately upon release by the U. S. Marshal to be removed from LIDO PARK'S Marina;

G:\Shared drives\Active Clients A - M\Lido Park Place Condominium Association\lid100521.030 - v. Kuzmyak (UD Boat Slip Eviction)\Pleadings\Federal Court - Maritime FC\Complaint 03-28-2025 Maritime.docx

**VERIFIED COMPLAINT**

7.    That it be decreed that any and all persons, firms or corporations claiming any interest in the VESSEL are forever barred and foreclosed of and from all right or equity of redemption or claim of, in, or to the VESSEL and every part thereof; and

8.    That LIDO PARK have such other and further relief in justice it may be entitled to receive.

Dated: May 21, 2025                    ROSEMAN LAW, APC


By: _____
    Ryan A. Stubbe, Esq.
    Attorneys for Plaintiff, Lido Park Place
    Condominium Association

**VERIFIED COMPLAINT**

## <u>VERIFICATION</u>

I, Abe Ulug, declare under penalty of perjury under the laws of the United States and the State of California as follows:

1.     I, the undersigned, am a vice president and treasurer of Plaintiff LIDO PARK PLACE CONDOMINIUM ASSOCIATION in this action. I certify I have read the foregoing Verified Complaint, and know its contents.

2.     The matters stated in the Verified Complaint are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Dated:  04 / 05 / 2025

By: _____

Abe Ulug
Vice President and Treasurer of
LIDO PARK PLACE CONDOMIUM
ASSOCIATION

**8**

**VERIFIED COMPLAINT**

Doc ID: 90cd87608cfd9d9acb1b1fb26569b097febef63f

# EXHIBIT A



DHS, USCG, CG-1270 (REV. 06-04)

OMB APPROVED
1625-0027

# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY
## UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# *CERTIFICATE OF DOCUMENTATION*

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| BOUNTY HUNTER | 978700 | SERT1044J990 | UNKNOWN |
| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
| NEWPORT BEACH CA | FRP (FIBERGLASS) | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| | | **DELETED** | | |
| 14 GRT | 11 NRT | 30.0 | 11.4 | 6.5 |

| PLACE BUILT |
|---|
| UNKNOWN |

| OWNERS | OPERATIONAL ENDORSEMENTS |
|---|---|
| RICHARD COLLINGS<br>LINDA COLLINGS<br>CHELSEY SEGER | RECREATION |

MANAGING OWNER

RICHARD COLLINGS
3603 FINLEY AVE
NEWPORT BEACH CA 92663

National Vessel Documentation Center USCG
I hereby certify this to be a true copy
of the records of this office.

*Christian G. Walker*     03/14/2025

Director, National Vessel Documentation Center

RESTRICTIONS
NO COASTWISE - BUILD EVIDENCE NOT PRESENTED;
NO FISHERY - BUILD EVIDENCE NOT PRESENTED

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
NOVEMBER 19, 2020

THIS CERTIFICATE EXPIRES

NOVEMBER 30, 2021

*Christian G. Walker*

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

PREVIOUS EDITION OBSOLETE, THIS CERTIFICATE MAY NOT BE ALTERED

# EXHIBIT B

DEPARTMENT OF
TRANSPORTATION
U.S. COAST GUARD
CG-1332 (Rev. 3-83)

# GENERAL INDEX OR ABSTRACT OF TITLE

OMB APPROVED 2115-0110

978700
(Official number)

(Rig)

(2) _____

(1) BOUNTY HUNTER
(Name of vessel)

(Ex: CF 5768 JZ)

This vessel was built at ............ UNKNOWN ............ in UNKNOWN, FRP
by ............ UNKNOWN ............ for ............ UNKNOWN
as appears by ............ UNKNOWN

| GRANTOR | GRANTEE | Kind of instrument and port conveyed | Date of instrument and date of maturity | Consideration or amount and discharge amount | Received for record | Recorded | Time of endorsement and entry or approval of Deputy — DATE, TIME, FILED | Part where endorsed |
|---|---|---|---|---|---|---|---|---|
| RECORD AT LOS ANGELES--LONG BEACH, CALIFORNIA | | | | | | | | |
| VESSEL DOCUMENTED PURSUANT TO 46 CFR §67.05-7(b)(2), STATE OF CALIFORNIA UNDOCUMENTED VESSEL SURRENDERED EVIDENCING REGISTERED OWNER(S) AS: RICHARD COLLINGS OR JAMES COLLINGS | | | | | | | | |
| VESSEL DOCUMENTED IN THE OWNERSHIP OF: RICHARD COLLINGS AND JAMES COLLINGS, EACH OWNING 50% CERTIFICATE OF OWNERSHIP CF 5768 JZ | | | | | | | | |
| JAMES COLLINS | RICHARD COLLINGS | B/S ALL | 27APR93 | | 11MAY93 1:55PM | BS-93 #716 | 05MAY93 11:00AM LOSVD | |

U.S. Coast Guard

# GENERAL INDEX OR ABSTRACT OF TITLE

Continuation Sheet No. 1

| INSTRUMENT TYPE | | | | |
|---|---|---|---|---|
| **BILL OF SALE** | | | | |

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| **100** | **MARCH 4, 2019** | **N.A.** | **59698000** | **4** |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **MARCH 04, 2019** | **6:24 PM** | **RECORDED** |

**SELLER**

RICHARD COLLINGS

**BUYER**

RICHARD COLLINGS
LINDA COLLINGS
CHELSEY SEGER, JOINT TENANTS WITH SURVIVORSHIP

| INSTRUMENT TYPE | | | | |
|---|---|---|---|---|
| **TRANSFER OF INTEREST** | | | | |

| % CONVEYED | DATE OF INSTRUMENT | AMOUNT | BATCH | DOC ID |
|---|---|---|---|---|
| **100** | **JUNE 10, 2021** | **N.A.** | **92875400** | **18** |

| DATE FILED | TIME FILED | STATUS |
|---|---|---|
| **JUNE 14, 2021** | **1:25 PM** | **TERMINATED: JUNE 21, 2021** |

**GRANTOR**

LINDA COLLINGS
RICHARD COLLINGS
CHELSEY SEGER

**GRANTEE**

STEVE J KUZMYAK

ISSUED AS AN ABSTRACT OF TITLE AS OF

DATE: 03/03/2025      TIME: 6:30 AM

*Christan G. Wackum*

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

CG-1332A (06/23)                    PREVIOUS EDITION MAY BE USED

EXHIBIT C

## Lido Park Place
## Condominium Association
## Marina

### Instructions for Slip Rentals

The Lido Park Place Marina is owned and operated by Lido Park Place Condominium Association (the "Association").
The Association allows resident owners and non-owners to moor boats to the slips at the marina pursuant to a
Mooring Agreement and related Marina Rules and Regulations. Resident owners have priority over non-owners for
slip availability and wait lists. All parties interested in using the Marina (resident owners and non-owners) must fulfill
the requirements listed below.

The following instructions are to help you submit an application for consideration of mooring a boat to a slip at the
marina.

#### If a slip is available:

1. Review the terms and conditions of the Mooring Agreement and Marina Rules and Regulations
2. Fill out, date and sign the Application and Mooring Agreement.
3. Return copies of the completed documents listed below via email to: marina@lidoparkplace.com
   **Completed Documents Required to be Returned Via Email Include the following:**
   o Application
   o Mooring Agreement
   o Current Registration of boat
   o Current Photo of boat
   o Insurance Certificate naming the Association as additional insured as shown below:
     Lido Park Place Condominium Association
     c/o Boyd Property Management
     25422 Trabuco Road, Suite #105-537
     Lake Forest, CA 92630
4. **Return All the Above Originals Along with Two Checks made out to Lido Park Place Condominium
   Association as follows:**
   o One check in an amount equal to the first month's rent, plus
   o One check as a deposit equal to the amount of the first month's rent
   o Issue two separate checks and do not combine the payments in one check
   o Mail all originals of all documents listed above along with both checks to:
     Lido Park Place Condominium Association
     c/o Boyd Property Management
     25422 Trabuco Road, Suite #105-537
     Lake Forest, CA 92630

**Please Read This Carefully.** The marina is owned by and adjacent to private residences. There are strict rules and
regulations pertaining to the use of and access to docks and common areas. Essentially, the use of the marina is
strictly limited to mooring a boat and not for having gatherings, parties or any activities that are noisy or in plain view
of the resident owners. Please review the Marina Rules and Regulations and Mooring Agreement carefully.

There is no assigned or visitor parking available to non-owners. Street parking is available, and most parking spaces
are metered, or an annual pass may be purchased from the City of Newport Beach. Additionally, there are no
common area rest rooms on the property.

No slips are held without receipt of all the above documentation and payments. Additionally, no slips are assigned
until approved in writing by the Association. If have any questions or require additional information, please contact
marina@lidoparkplace.com.

Thank you.

The Board of Directors,
Lido Park Place Condominium Association

## Lido Park Place Condominium Association
### Marina Slip/Side-Tie Rental Application

**Date:** 08/06/2022

**Name:** Steve Kuzmyak

**Mailing Address:** 3505 1/2 Finley Avenue, Newport Beach CA 92663

| **Phone Numbers** | **Residence** 949-220-7003 | **Mobile** 949-706-4736 |
| | **Business** 949-706-4736 | **Fax** 714-455-7156 |
| | **Email** stevekuzmyak@gmail.com | |

### Vessel Information

**Vessel Name:** Bounty Hunter

**CF or Documentation Number:** 978700     **Builder:** SeaRay

**Model Name/Number:** 310 Express Cruiser     ☑ **Power or [ ] Sail**

**Type:** Express
<sub>Sport Cruiser, Express, Sport Fisher, Motorsailer, Sloop, Etc.</sub>     **Flybridge [ ] Yes or ☑ No   Year Built:** 1991

**Total Length Overall:** 35 ft tip to tip     **Beam:** 11.5     **Draft:** ____
Including Anchor, Swim Steps, Etc.     At Water Line / At Coaming     Sailboats Only

**Insurance Carrier/Agent Name/Phone:** ____

**Insurance Policy No.:** ____
Note: Copy of insurance will be required prior to start of rental period naming Lido Park Place Condo Assn. as additional insured

**Signature of Applicant:** ____

**Deposit Check Number:** 1345     **Deposit Check Amount: $** 1800.⁰⁰

<sub>MOORING APPLICATION – Lido Park Place Condominium Association 700803</sub>

## LIDO PARK PLACE CONDOMINIUM ASSOCIATION

### MOORING AGREEMENT

THIS MOORING AGREEMENT ("Agreement") is entered into by and between LIDO PARK PLACE CONDOMINIUM ASSOCIATION, a California Nonprofit Mutual Benefit Corporation ("ASSOCIATION") and

Steve Kuzmyak _____ who resides at    3505 1/2 Finley Avenue

Print Name

Newport Beach ____ CA _____ State _____ 92663 _____ Zip Code _____ ("LESSEE"). _____ Street Address

City

ASSOCIATION and LESSEE may be hereinafter individually referred to as a Party and collectively as the Parties.

### PREAMBLE

A.    The ASSOCIATION is an association of homeowners commonly known as Lido Park Place located in Newport Beach, California.

B.    ASSOCIATION has a license from the City of Newport Beach to operate and maintain a marina for boats in Newport Beach ("Marina"), which ASSOCIATION operates and maintains for use by owners of condominiums in the Lido Park community ("Community") and other lessees.

C.    ASSOCIATION has formally adopted certain rules and regulations pertaining to boats moored at the Marina and the use of the docks by a Lessee or user of the docks, which is more specifically described in Exhibit "B" Marina Rules and Regulations attached hereto and incorporated by reference.

D.    LESSEE owns a boat, which is more specifically described in Exhibit "A" attached hereto and incorporated herein by this reference ("Boat"), and desires to moor said Boat in the Marina.

E.    ASSOCIATION desires to enter into this Agreement with LESSEE, and authorizes LESSEE to moor LESSEE'S Boat in Slip No. _____ ("Slip") located in the Marina subject to the terms and conditions set forth herein. The definition of "Slip" for purposes of this Agreement shall include side ties.

NOW, THEREFORE, the Parties hereby agree as follows:

1.    **TERM OF AGREEMENT.**

This Agreement shall commence on _____, 20____, and continue thereafter on a month-to-month basis, until terminated pursuant to the terms of this Agreement.

2.    **MOORING FEE.**

LESSEE shall pay ASSOCIATION a monthly fee of [$ per current rate schedule], which is based upon the greater of the length of the assigned Slip or the adjusted length overall of the vessel multiplied by the current fee charged per foot ("Mooring Fee"), which shall be due and payable on the first day of each month, to moor LESSEE'S Boat in the Marina. A late fee of ten percent (10%) of the monthly Mooring Fee shall begin to accrue if the Mooring Fee is not received by ASSOCIATION on the third day of the month in which it is due. All late fees shall be paid by LESSEE on the first day of the month following the month for which the late fee has accrued. ASSOCIATION reserves the right to increase the monthly Mooring Fee at any time, upon thirty (30) days written notice to LESSEE.

3.    **DEPOSIT ON ACCOUNT.**

In addition to the monthly mooring fee, LESSEE shall pay ASSOCIATION a one-time sum equal to one month's Mooring Fee ("Deposit"). The Deposit shall be due and payable to ASSOCIATION upon execution of this Agreement. The Deposit, less any amounts due ASSOCIATION including, but not limited to, outstanding Mooring Fees, late fees or other fees and costs levied or incurred by ASSOCIATION, shall be returned to LESSEE within thirty (30) days of termination of this Agreement and vacating of Slip. The Deposit shall not accrue interest.

4.    **USE OF SLIP.**

(a)    LESSEE'S use of the Slip shall be for the sole purpose of mooring LESSEE'S Boat and for no other purpose.

(b)    LESSEE agrees that the Boat shall not be used at any time as a residence for any person.

(c)    Boats in slips 1-14 shall not exceed the length allowed by the City of Newport Beach Harbor Resources Division.

(d)    No waste matter from sinks, toilets, marine heads, holding tanks, bilges or any other receptacles shall be discharged into the waters of the Marina or in Newport Harbor. If the Boat is equipped with a toilet, marine head, or any other permanent or temporary receptacle for human waste, then the Boat shall be equipped with a holding tank designed to retain such waste and deposited in such receptacle until such time as the waste can be discharged into a sanitary sewer system or otherwise discharged in accordance with the law. LESSEE agrees to allow ASSOCIATION to inspect LESSEE'S Boat, from time to time, without prior notice from ASSOCIATION, to ensure compliance.

(e)    LESSEE 'S Boat shall be safely and properly secured in the Slip at all times during which the Boat is moored in the Marina, in a manner acceptable to ASSOCIATION. If, for any reason, ASSOCIATION, in its sole discretion, deems it necessary to re-secure the Boat, LESSEE agrees to allow ASSOCIATION to re-secure the Boat without prior notice to LESSEE. LESSEE agrees to promptly reimburse ASSOCIATION for all costs incurred in re-securing the Boat and to pay ASSOCIATION a reasonable service fee for re-securing the Boat. Under no circumstances is ASSOCIATION responsible for the safety or security of the Boat, due to ASSOCIATION'S decision to re-secure or to not re-secure the Boat.

(f)    ASSOCIATION reserves the right to move or require LESSEE to move the Boat from the Slip to another slip in the Marina for any reason at any time, and LESSEE hereby consents to this provision and authorizes ASSOCIATION to board the Boat for said purpose. ASSOCIATION, its directors, officers, and agents shall not be liable for any loss or damage to the Boat as a result of ASSOCIATION'S movement of the Boat under this Agreement unless such damage was caused by the gross negligence or willful misconduct of ASSOCIATION.

(g)    LESSEE agrees not to conduct or allow the Boat to be used for commercial purposes while moored at the Marina, without the prior written consent of ASSOCIATION.

(h)    LESSEE acknowledges and agrees that ASSOCIATION does not guarantee the non-interference or non-interruption of LESSEE 'S use of the Slip or the Marina caused by conditions beyond ASSOCIATION'S control, including acts of God, public authorities, other third parties, and the ASSOCIATION'S maintenance and repair of the Marina.

## 5.    REPRESENTATIONS AND WARRANTIES.

LESSEE acknowledges that LESSEE has been given the opportunity to inspect the Slip and the Marina and, knowing the condition of same, agrees to the use of the Slip and the Marina in such condition, and that no representations or warranties as to the condition of the Slip and the Marina have been made by ASSOCIATION to LESSEE. LESSEE acknowledges and agrees that this Agreement is for the use of the Slip only, and that such use is at the LESSEE 'S sole risk. ASSOCIATION shall not be liable for the care of or damage to LESSEE 'S Boat moored in the Slip or for any other loss or damage whatsoever and however occasioned by LESSEE relating thereto, including damage or loss caused by power surges or failures. LESSEE acknowledges and agrees that LESSEE and LESSEE 'S family members', guests', and other invitees' use of the Boat, Slip and the Marina is at their own risk and ASSOCIATION shall not be responsible for any injury or damage incurred or otherwise suffered by such persons as a result of such use.

## 6.    MAINTENANCE AND REPAIR.

(a)    LESSEE shall be responsible for the maintenance, repair and restoration of the Slip reasonably related to any damage or destruction thereto, caused by any act or omission of LESSEE, his or her agents, employees, family members, guests, or other invitees.

(b)    LESSEE agrees that any electrical service taken from a common outlet to LESSEE 'S Boat shall be properly connected by LESSEE so as to prevent any damage or injury to the Slip, Boat, persons, docks, other boats, or the Marina. However, ASSOCIATION does not warrant that such electrical or other utility service shall be available for use by LESSEE during the term of this Agreement.

(c)    LESSEE shall not store any small boats, dinghies, skiffs, bait tanks, boat gear, power lines, water hoses, or other equipment or personal property on or about the docks or Slip and surrounding area, while not in use. LESSEE shall maintain the Slip, including the adjacent docks and gangways, in a neat, clean and orderly condition, free and clear of such items, other than power lines and water hoses during use.

(d)    No wheels, fenders, rubbing strips or other cushioning devices may be attached to the Slip or dock for the purpose of protecting the Boat without the prior written approval of ASSOCIATION.

(e)    No flammable, combustible or other hazardous material shall be kept or maintained at the Slip or on any of the docks in the Marina at any time for any reason. LESSEE agrees to immediately report any unsafe condition in or about the Marina, or any condition LESSEE believes to be hazardous, to the ASSOCIATION.

(f)    LESSEE shall maintain LESSEE 'S Boat in shipshape condition at all times. Failure to maintain the Boat in shipshape condition and as per the guidelines set forth in the Marina Rules & Regulations is grounds for termination of this Agreement.

## 7.    INSURANCE.

LESSEE, occupying slips 1 through 14 ,shall obtain and maintain, throughout the term of this Agreement and at LESSEE 'S expense, a comprehensive general liability insurance policy with a minimum of $100,000 for property damage per occurrence, $1,000,000 for bodily injury or death per occurrence. LESSEE shall provide ASSOCIATION with a certificate of insurance evidencing such coverage and shall cause ASSOCIATION to be named as an additional insured on the general liability insurance policy. LESSEE, occupying slips other than 1 through 14 , shall obtain and maintain, throughout the term of this Agreement and at LESSEE 'S expense, a comprehensive general liability insurance policy with a minimum of $100,000 for property damage per occurrence, $500,000 for bodily injury or death per occurrence. LESSEE shall provide ASSOCIATION with a certificate of insurance evidencing such coverage and shall cause ASSOCIATION to be named as an additional insured on the general liability insurance policy. The certificate of insurance shall provide that ASSOCIATION will be given at least thirty (30) days written notice of any change or cancellation in coverage. LESSEE 'S insurance carrier, agent's name and address, and policy number shall be set forth in Exhibit "A," which is attached hereto and incorporated herein by this reference.

LESSEE 'S obligations under this Agreement.

## 8.    MARINA RULES AND REGULATIONS.

LESSEE 'S use of the Slip and the Marina shall be governed by Marina Rules and Regulations ("Marina Rules"), a copy of which has been provided to LESSEE. LESSEE hereby acknowledges receipt of the Marina Rules and agrees to abide by the terms and conditions set forth therein and as may be amended in the future. A copy of the Marina Rules is attached hereto as Exhibit "B" and is incorporated herein by

MOORING AGREEMENT – Lido Park Place Condominium Association 200805

this reference. ASSOCIATION reserves the right to modify the Marina Rules at any time as it deems appropriate and ASSOCIATION shall maintain a current copy of Marina Rules on its website www.lidoparkplace.com or provide a copy of them upon request from a LESSEE. LESSEE is responsible for ensuring compliance with the Marina Rules by LESSEE'S agents, employees, family members, guests, and invitees, at all times while visiting LESSEE or occupying ASSOCIATION common areas or otherwise using the Boat, docks, Slip and/or Marina.

### 9.    VACANCY OF SLIP.

If LESSEE vacates the Slip for thirty (30) continuous days, without prior written notice to ASSOCIATION, then LESSEE shall be deemed to have abandoned the Slip, which shall result in termination of this Agreement.

If LESSEE temporarily vacates the Slip for four (4)or more continuous days, LESSEE agrees to give ASSOCIATION notice of such temporary vacation and authorizes ASSOCIATION to place another boat in LESSEE'S Slip during such time, at the ASSOCIATION'S sole discretion.

### 10.    COMPLIANCE WITH LAWS.

LESSEE hereby warrants, represents, and agrees that, at all times during the term of this Agreement, LESSEE shall comply with any and all applicable federal, state and local laws and regulations relating to LESSEE'S use of the Boat, Slip and Marina.

### 11.    TERMINATION OF AGREEMENT.

This Agreement may be terminated by ASSOCIATION at any time, with or without cause or notice to LESSEE, and LESSEE may terminate this Agreement, at any time, with or without cause, upon thirty (30) days written notice to ASSOCIATION. Any notice of termination provided by LESSEE shall become effective on the later of thirty (30) days from the ASSOCIATION'S receipt of written notice, or the last day of the month following the month a written termination notice was received by the ASSOCIATION. In the event that LESSEE is a Homeowner of Lido Park Place Condominium Association and is current in all Association dues and not otherwise in violation of the governing documents, the Association may only terminate this Agreement for cause (i.e., breach of the Marina Rules or this Agreement) upon seven (7) days prior written notice.

This Agreement shall terminate automatically upon the destruction of the Slip and/or Marina caused by fire, storm or other cause rendering performance by ASSOCIATION impossible.

Upon termination of this Agreement, LESSEE shall remove the Boat from the Slip and all other personal property, if any, from the Marina, and shall surrender the Slip and all keys to the Marina to ASSOCIATION and the Slip shall be in as good condition as existed at the commencement of this Agreement.

If, upon written notice of termination, LESSEE fails or refuses to vacate the Slip on the termination date, then the monthly Mooring Fee set forth in Paragraph "2" above, shall increase to triple the monthly Mooring Fee during the time LESSEE continues mooring LESSEE'S Boat in the Slip. LESSEE shall also be responsible for reimbursing ASSOCIATION for any and all attorneys' fees and costs incurred in its attempts to obtain LESSEE'S compliance with the removal of LESSEE'S Boat in connection with the termination of this Agreement.

### 12.    ENTIRE AGREEMENT.

This Agreement is the only Agreement between the Parties with respect to the subject matter of this Agreement and any other agreements entered into by and between the Parties and any other understandings, representations or warranties between the Parties with respect to such subject matter are superseded and terminated by the execution of this Agreement by the Parties. This Agreement may be amended or modified only by a written instrument executed by both Parties.

### 13.    SEVERABLE PROVISIONS.

The provisions of this Agreement are severable, and if any one (1) or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions, and any partially unenforceable provisions to the extent enforceable, shall nevertheless be binding and enforceable.

### 14.    EFFECTIVE WAIVER.

The waiver by either Party of a breach of any term, promise or condition of this Agreement shall not constitute a waiver of any subsequent breach of the same or any other term, promise or condition. The failure by either Party to enforce any right for a period of time shall not constitute a waiver of such right or any term, promise or condition of this Agreement.

### 15.    INDEMNIFICATION.

LESSEE agrees to indemnify, defend and hold ASSOCIATION and its employees, officers, directors and agents harmless against any and all claims, damages, losses and expenses, including, without limitation, court costs and reasonable attorney's fees (collectively "Claims") arising from the acts or omissions of LESSEE, its agents, employees, family, guests, and invitees, in the performance or nonperformance of

### 16.    ASSIGNMENT.

Except as otherwise specifically provided in this Agreement or in the Marina Rules, neither Party may assign or otherwise transfer its rights and obligation under this Agreement without the informed, written, consent of the other Party.

### 17.    CAPTIONS.

Captions and paragraphs in this Agreement are solely for the convenience of the Parties and shall not limit, describe or affect the substance or scope of any provision of this Agreement.

18.    **GOVERNING LAW AND JURISDICTION.**

This Agreement shall be construed and enforced pursuant to the laws of the State of California, and the Parties agree that the jurisdiction for any legal action relating to this Agreement shall be in the County of Orange, State of California.

19.    **ATTORNEY'S FEES.**

If the ASSOCIATION incurs attorneys' fees and costs to enforce any provision of this Agreement, the ASSOCIATION shall be entitled to reimbursement from LESSEE of such fees and costs, even if a legal action or proceeding is not initiated. If either Party brings legal action to enforce any provision of this Agreement, or to secure damages for breach, the prevailing Party shall be entitled to reasonable attorneys' fees and costs.

20.    **NOTICES.**

Notices from ASSOCIATION to LESSEE shall be sent by regular mail to the LESSEE'S mailing address as set forth in Exhibit "A" attached hereto.

Notices from LESSEE to ASSOCIATION shall be sent by regular mail to:

LIDO PARK PLACE CONDOMINIUM ASSOCIATION
c/o BOYD PROPERTY MANAGEMENT
25422 Trabuco Road, Suite #105-537
Lake Forest, CA 92630

21.    **AGREEMENT CONSTRUCTION.**

The Parties acknowledge and agree that this Agreement has been drafted and negotiated by both Parties and that, in the event an ambiguity arises with respect to the provisions hereof, the provisions of this Agreement shall not be construed or interpreted against either Party by virtue of its draftsmanship.

22.    **RIGHTS OF HOMEOWNER FOR SLIP.**

If a homeowner requires a slip and the only slip available is that of a non-homeowner the ASSOCIATION will direct the removal of a non-homeowner boat. The decision on which non-homeowner boat to removed will be based upon several factors, including but not limited to, the best economic outcome for the ASSOCIATION. Selected non-homeowner will be given 2 full calendar months to vacate.

Dated:_____, 20____

LIDO PARK PLACE CONDOMINIUM ASSOCIATION, a California Nonprofit Mutual Benefit Corporation

By:_____

Its:_____

Dated: 8 / 7 , 20 22

LESSEE

STEVE KUZMYAK

3505 ½ FINLEY AVE

NEWPORT BEACH CA 92663

MOORING AGREEMENT – Lido Park Place Condominium Association 700603

**EXHIBIT "A"**

1.   LESSEE:

Name:____Steve Kuzmyak_____

Address:___3505 1/2 Finley Avenue, Newport Beach CA 92663_____

_____

Mailing Address (if different): _____

_____

Residence Address (if different): _____

_____

Phone: Residence___949-220-7003_____Business___949-706-4736_____

        Mobile___949-706-4736_____

Email:  Residence_stevekuzmyak@gmail.com_Business_stevekuzmyak@gmail.com_

2.   Boat:

Vessel Name:___Bounty Hunter_____

CF/USCG Doc #:_____Builder:___SeaRay_____

Builder's Hull No.:___978700_____Type:_310 Express Cruiser_Year Built:_1991___

Total Length Overall:_35 ft tip to tip___Beam_11.5____/_____Draft:_____
(including bowsprit, swim step, pulpit, anchor, etc.)  (at water line)  (at top of coaming)   (Sailboat only)

3.   Insurance:

Insurance Carrier:_____

Insurance Agent:

        Name:_____

        Address:_____

        Telephone:_____

Insurance Policy No.:_____

MOORING AGREEMENT – Lido Park Place Condominium Association 700803

**EXHIBIT B**

**MARINA RULES AND REGULATIONS**

[SEE PAGES THATFOLIO W]

[THE REST OF THIS PAGE HAS BEEN LEFT BLANK INTENTIONALLY]

### LIDO PARK PLACE CONDOMINIUM ASSOCIATION

#### MARINA RULES AND REGULATIONS

The following Rules and Regulations govern the application and assignment of slips in the Marina for the mooring of boats and the use of the slips and other Marina facilities, located in the Lido Park Place community ("Community"). The definition of "Slip" for purposes of these Rules shall include side ties.

I.  **Application to Moor Boat in Marina**

    A.    <u>Mooring Agreement</u>: No boat may occupy a slip in the Marina unless and until a written Mooring Agreement has been entered into and executed by the user of the slip ("Lessee") and the Lido Park Place Condominium Association ("Association") as approved by its Board of Directors (the "Board").

    B.    <u>Authorized Applicants</u>:

        1.    The following persons are authorized to apply to moor a boat in the Marina:

            a.    Persons owning a unit in the Community, whether or not such persons reside in the Community ("Homeowners").

            b.    Persons that do not own a unit in the Community ("Tenants").

        2.    Homeowners may moor one boat of greater than 25 feet in length in slips 1 through 14 (large size slips) and one boat of less than 25 feet in slips 15 through 39 (small size slips) at the prevailing homeowner rates.  Any more than 2 boats or additional boats of either size category shall be subject to tenant Mooring rates.

        3.    Only persons holding legal title to a boat, whether or not with other persons or entities, may seek to moor such boat in the Marina.

    C.    <u>Application Form and Fees</u>:

        1.    Once completed, the attached application form shall be submitted to the Association's managing agent, along with the following:

            o    Current registration or ownership documentation
            o    Current picture of the boat to be moored in the Marina
            o    The application fees.

        2.    The application fee is equal to the greater of $500 or the estimated first month rental amount.

        3.    The application fee shall be refunded to the applicant upon the denial of the application.

        4.    Applications approved by the Board shall be followed by submission of a fully executed Mooring Agreement within 5 days along with two separate checks made payable to Lido Park Place Condominium Association as follows:

            o    One check in an amount equal to the first month Mooring fees, and
            o    One check as a deposit in an amount equal to the first month rental fees
            o    The deposit is to be held until the Mooring Agreement has been terminated and the Applicant's boat has been removed from the marina.  At such any amounts owed pursuant to the Mooring Agreement will be deducted from the deposit amount on hand before the balance is returned to Applicant. At no time may any portion of the deposit be applied to any rents owed.
            o    The recipient of an approved application may request the application fee be applied to the required deposit

        5.    Any refunds due to Applicant pursuant to the Application or Mooring Agreement shall be allowed thirty (30) days for processing.

        6.    Current users of a slip seeking to relocate their boat to another slip of the same or different size must submit a new application, immediately upon the request of the Association. However, no application fee shall be required.

        7.    An authorized applicant may apply for the use of more than one slip in the Marina. A separate application form shall be submitted for each slip and an application fee must be paid for each slip applied for.

II.  **Slip Assignment and Mooring Fees**

    A.    <u>Slip Assignment</u>

        1.    The Board shall be responsible for determining the size and class of boats to be assigned slips in the Marina based upon the criteria set forth in these Rules.

2. Boats will be assigned slips based upon the best utilization of space and to maximize revenue to the Association.

3. No boat shall occupy a slip where the beam or any part of the boat may protrude more than six inches past the edge of the dock which it is moored.

4. No power boat shall be allowed in the marina where there is a fly bridge that is excessive in height, has a high tower for fishing or is believed to obstruct the views of resident owners beyond a reasonable expectation consistent with the historic practice of the Marina.

5. The length of a boat shall be determined by the adjusted length overall (LOA), which length shall include bow sprint, bow pulpit or bow anchor, swim step, dingy or davits, outboard motor, out drive device or any other type of overhanging fixture. The LOA will be based upon the manufacturer's specified LOA (if available) for the boat and adding on additional lengths based on the adjustments as set forth herein. The Association's determination of LOA shall be in its sole discretion and shall be final.

6. Mooring fees are based upon the greater of the LOA or the stated length of the slip. The Marina stated slip lengths are as follows:

   o   Slips 1 through 14 are 40'
   o   Slips 15 through 39 are 21', except for slips shown below:
       ▪   Slips 17, 23, 31 & 37 are 18'
       ▪   Slip 30 is 8'
       ▪   Slip 37A is 12'

7. The Board may set a fixed fee for some or all slips. In such event, should the LOA of a boat exceed the fixed fee, there will be an additional charge based upon the additional length of the boat. The additional charge shall be calculated on a per foot basis by dividing the fixed fee amount by the stated slip length. For example, if the fixed fee is $1,400.00 for slips 1 through 14, then the additional monthly fee for boats with a LOA greater than 40 feet would be $35.00 per foot ($1,400/40).

8. Only one boat may be assigned to and occupy a slip at any time.

B.   Priority of Assignment and Wait List

1. The Association or their designee shall maintain a wait list for slips applied for based upon the date the application was received, the size of the slip applied for, the type of authorized applicant (e.g., Homeowner or Tenant), and status as a current user of a slip in the Marina.

2. Slips shall be assigned, and the wait-list priority shall be based upon the order in which applications are received for the size-range of slips applied for and the type of authorized applicant. Homeowners shall be given priority of assignment and wait-listing over Tenants. Boats co-owned by a Homeowner and any non-Homeowner or entity shall be considered a Tenant boat for purposes of mooring fees, however, will be given priority of assignment provided the Homeowner's ownership in the boat is not less than 50%.

3. Priority among Homeowners shall be based upon the date the applications were received for the size of slip applied for and whether the Homeowner is a current user of a slip in the Marina. A Homeowner shall not occupy more than one slip in the Marina if another Homeowner applies for a slip or is on the wait list for a slip in the same size range and no other slips of adequate size are available.

4. Priority among Tenants shall be based among several factors, including but not limited to, the date the application was received and the size of boat that would generate the most revenue for the Association.

5. Homeowners occupying a slip who apply for a different size slip will not be given priority over other Homeowners non occupying a slip that are on the wait list for that size slip.

6. If a boat occupying a slip is sold, then the slip must be vacated pursuant to the terms of the Mooring Agreement. If the new boat owner is a Homeowner or Tenant seeking to continue mooring the boat in the Marina, then the new boat owner must apply for the slip or a different slip and is subject to all other application requirements and assignment rules set forth herein. A subsequent owner of a boat currently moored in the Marina will be provided reasonable priority of that slip assignment in order to allow the boat to remain in the slip over wait-listed applicants. However, such priority and determination shall be at the sole discretion of the Association.

7. If a Homeowner sells his or her boat, the slip must be vacated within thirty (30) days. If the Homeowner intends to purchase another boat of the same approximate size, the

Homeowner may retain the space for thirty (30) days (or more with the authorization of the Association and the slip fees must continue to be paid at the greater of the same rate paid immediately prior to the sale of the boat or at the prevailing rates at that time.

C.    Mooring Fees

1.    The Mooring fee specified in the Mooring Agreement shall be based upon the greater of the then-prevailing rates on a per-foot-per-month basis of the LOA (see Rule II.A.3. above for definition of LOA), or designated length of the slip.

2.    The Mooring fee for Homeowners shall be at a discounted rate, which shall be less than the Mooring fee charged for Tenants. Homeowners shall be allowed to moor one boat in each of the large size slips and one boat in the small size slips at the Homeowners' discounted rate. The mooring fee for additional slips leased by a Homeowner shall be at the Tenant rate. Only Homeowners that are the sole owners of a boat may moor their boat in the Marina at the discounted Homeowner rate. If a Homeowner co-owns a boat with another person or entity, then the Tenant rates shall apply.

3.    Mooring fees for Homeowners and Tenants shall be determined by the Association's Board of Directors and may be modified at any time at the Board of Directors' sole discretion.

D.    Occupancy of Space

1.    No boat may occupy a slip prior to the execution of a Mooring Agreement by the Applicant and the Association and payment of slip fees and deposit.

2.    A slip shall be occupied by the boat assigned thereto within 30 days after execution of a Mooring Agreement. Failure to occupy the slip within such time may result in termination of the Agreement and the slip will be subject to being reassigned.

3.    The Association may in the Board's discretion, authorize two (2) thirty (30) day extensions of time within which a slip must be occupied.

4.    If an applicant fails to occupy a slip within the requisite time period, the application fee shall be forfeited.

5.    Only the boat described in the Mooring Agreement may occupy the slip to which it is assigned. No other boats may be moored in the slip, for temporary purposes or otherwise, unless approved by the Association, its Board or its designee.

6.    If a Tenant or Homeowner is going to be vacant from the slip over 7 days, the tenant must notify the Association or his/her designee of the term of absence.

7.    If a Homeowner desires a slip and all slips are filled, the Board will determine if any slips are filled with Tenants and will determine which Tenant boat will be notified to vacate the slip for the benefit of the Homeowner. In making the decision which Tenant must vacate, the Board will take into consideration the tenure of the potential Tenants, the financial benefits and impacts to the Association based upon boat size removed and replaced, prior Tenant pay history, Tenant's boat condition and appearance, and other considerations as determined by the Board. The Tenant selected will be given up to the next two (2) full calendar months to vacate. The Homeowner to occupy the vacating slip must have provided all the documents required by the Mooring Agreement including deposit and first month rent prior to notification to the Tenant to vacate the slip.

8.    If a Homeowner owns a boat that can only be accommodated by a certain slip in the Marina (or slips) due to the size of the boat or other considerations that may affect the safe navigation in and out of the Marina for other mariners or safety of docks and/or their intended use, then the Board will have the right to direct any other Homeowner to move their boat to another appropriate slip, provided that the new slip can accommodate the relocated boat.

9.    No owner has any exclusive rights to slips regardless of future plans to buy larger boats or otherwise. The Board will provide its best efforts to accommodate Homeowner requests for specific slip locations, however, the Board shall not request Homeowner boats be moved for convenience of other Homeowners. Homeowners desiring other slip locations may submit requests that will be held as part of the wait list and is subject to the wait list provisions set forth herein.

10.   If a Tenant or Homeowner is going to be vacant from the slip over 7 days the tenant must notify the Association or his/her designee of the term of absence.

E.    Use of Slips by Transients

1.    Transients are boat owners authorized by the Association to moor their boat(s) in slips that

may or may not be leased to other persons on a temporary basis at rates determined by the Association.

2. These Rules apply to a transient's use of a slip, as they apply to all users of slips in the Marina.

III. **General Rules Governing Use of Slips and Other Marina Facilities**

A. All actions and/or decisions required under these Rules shall be made by the Association's Board of Directors.

B. Questions concerning the use of the slips or other Marina facilities shall be directed to the Association's managing agent, who will communicate such questions to the Board or their designee, as necessary.

C. **THE MARINA IS PRIVATELY OWNED AND IS LOCATED ADJACENT TO THE RESIDENT OWNERS OF THE COMMUNITY. THE USE OF THE DOCK IS STRICTLY LIMITED AS A LOCATION FOR MOORING A BOAT. OTHER THAN IN THE NORMAL COURSE OF DISEMBARKING OR RETURNING TO AND FROM THE MARINA, NO ACTIVITIES ARE PERMITTED AT THE MARINA OR WHILE ON A BOAT MOORED TO THE DOCKS AT THE MARINA THAT CAUSE ANY TYPE OF NUISANCE, LOUD NOISE OR AFFECT THE VIEW OF THE RESIDING OWNERS, THEIR GUESTS OR TENANTS. THE ASSOCIATION DOES NOT ALLOW GATHERINGS, PARTIES, GROUPS OF PEOPLE OF ANY SIZE HANGING OUT ON THE BOAT IN PLAIN VIEW OF OWNER CONDOMINIUMS OR NOISE OF ANY NATURE THAT CAN BE HEARD BY HOMEOWNERS OR IN ANY COMMON AREAS OF THE COMMUNITY. ANY ACTIVITY THAT WOULD BE A DISTRACTION OR NUISANCE IN ANY WAY TO THE HOMEOWNERS OF THE COMMUNITY IS STRICTLY PROHIBITED. AT NO TIME WHILE MOORED TO A SLIP MAY ANY TENANT, HOMEOWNER OR GUEST REMAIN ON A FLYBRIDGE OF ANY BOAT FOR ANY REASON OTHER THAN TO OPERATE THE BOAT IN OR OUT OF THE SLIP. THE ASSOCIATION RESERVES THE RIGHT TO TERMINATE ANY MOORING AGREEMENT WITHOUT NOTICE FOR VIOLATION OF THIS RULE. IN SUCH EVENT, NOTICE TO VACATE THE SLIP SHALL BE LIMITED TO 5 DAYS FROM THE DATE OF NOTICE OF TERMINATION OF THE MOORING AGREEMENT.**

D. No tenders or floats of any kind may be tied off to the boat while moored to a slip for any reason.

E. Boats shall be washed on a regular basis and maintained in good repair and appearance and in shipshape condition at all times while moored in the Marina. The Board shall determine in their sole discretion whether a boat is in shipshape condition. All open boats such as small powerboats, dinghies, inflatables and rowboats will be covered with a presentable and well-maintained boat cover. The Association by order of the Board may request improvements in the appearance of boats, which shall include but not be limited to, overall cleanliness, noticeable rust, cracks to the exterior, paint finish, condition of isinglass and canvas covers and other items affecting the appearance of the boat. Failure to keep a boat in shipshape condition shall be grounds for termination of the Mooring Agreement.

F. All canvas, isinglass and any coverings must be kept clean and be free of rips, tears, mold and no signs of significant fading.

G. All boats shall be properly identified with a valid "CF" number or other valid and current U.S. Coast Guard Documentation maintained on file with the Association along with the boat's name, at all times while in the Marina.

H. No commercial sign shall be displayed on a boat in the Marina at any time without the prior written approval of the ASSOCIATION, except one "For Sale" sign may be displayed in the stern (or bay ward side) of the boat that is only visible from the water and not from any location in the Community.

I. Skateboards, bicycles, roller skates, rollerblades, or other similar type of recreational activity is prohibited on the docks, walkways, ramps or other Marina facilities.

J. No items or objects shall be stored on the dock except for dock steps, which must be pre-approved by the Association prior to bringing into the marina or placing on the dock. No items or objects shall be stored on the dock steps at any time.

K. All trash shall be disposed of in trash receptacles located in and around the docks and Marina facilities. No trash or other item may be left on the docks or disposed of in the Marina waters or in Newport Harbor at any time for any reason.

L. No dock or other Marina facility shall be modified or improved without the prior written consent of the Association. Any authorized improvements shall become the property of the Association.

M. No major maintenance or repair may be performed at the Marina without the prior authorization of the Association. Lessees shall not use paint removers, shall not burn paint for the purpose of removal, use

110 or higher AC power tools, or use paint spraying devices on the top sides or above decks while in the Marina.

N.    No noxious, offensive, or illegal activities may be engaged in or on any boat and nothing shall be done or maintained on any boat or at the Marina which constitutes a nuisance.

O.    Pets are allowed at the Marina only when going to and from a boat and must be on a leash at all times. However, barking dogs and animals not properly trained will not be tolerated and subject the Lessee to termination of the Mooring Agreement. Lessees must clean up after their pets.

P.    Water service and electricity are the only utilities provided by the Association. There is no telephone service or sanitary/restroom facilities. Water siphons may not be used to empty bilges.

P.    All boats must be equipped with one or more automatic bilge pumps to maintain the boat in a safe condition and to prevent damage to the slips and Marina.

Q.    Lessees must annually submit a certificate of insurance naming Lido Park Place Condominium Association as additional insured.  Failure to provide this insurance certificate will be grounds for immediate termination of the Mooring Agreement.  In such event, the notice to vacate the slip shall be limited to 5 days from the date of notice of termination of the Mooring Agreement at the determination of the Board.

R.    Lessees of large boats in slips 1-14 shall dock their boats 'bow in' at the slips to reduce noise and engine exhaust. Application may be made to the Association with reasons why a boat cannot be moored 'bow in' for Board approval. If the Board approves docking 'stern first' into a slip, engine usage shall be minimized to no more than two minutes prior to vacating the slip. No entertainment is allowed at any time at the stern of the boat if allowed to be 'stern in'.

S.    No boat may block the fairways into the North or South Lagoon so as to impair the ingress and egress of other boats. The City of Newport Beach requires a minimum width of 14'6" available for ingress and egress at the fairway or the overall beam of a boat moored in the Marina Lagoons, whichever is greater. This minimum width of available space must be maintained at all times at the fairways.

T.    Use of shore power must be minimized. Shore power cannot be used to operate air-conditioning, electrical stoves or other cooking appliances. Shore power is to be only used to keep the batteries charged and maintain emergency or safety equipment.

U.    The Board may change these Rules & Regulations at any time without notice.

IV.    **Guest Dock**

A.    From time-to-time the Association may designate a slip as a Guest Slip. If a Guest Slip is designated it will be for the temporary mooring of boats by Homeowners, Tenants, and/or their guests.  Guest Slips may be reserved in advance and any Lessee that desires to use a Guest Slip must first obtain permission from the Association prior to allowing any occupancy of a Guest Slip. Under no circumstances may a Guest Dock or other slip not rented by a boat owner be occupied without the prior consent of the Association or the Board.

B.    Guest Slips are allowed a three-hour maximum time to remain moored to allow for other guests to use the slip, unless pre-approved in advance by the Association.

C.    Any person mooring their boat on the Guest Slip shall vacate the Marina immediately upon request by the Association.

F.    Boats moored on the Guest Slip must be safely secured at all times, with at least three (3) dock lines (a bow, stern and spring line) for boats over 25 feet and two (2) dock lines (a bow and stern line) for boats under 25 feet.

G.    The Guest Slip is not to be used for maintenance and/or repair of boats

## Lido Park Marina – Slip Fees 2024

| Slip Description | Vessel Length Overall | Rates* |
|---|---|---|
| **Full Slips** | **Up to 49'**<br>**50' – 56'** | **$52.00/ft**<br>**$57.00/ft** |
| **Side ties (inside marina)** | **22' and under**<br>**starting at** | **$40.00/ft** |
| **Single Kayak Rack** | **N/A** | **$60.00** |

*Vessel Length Overall (LOA) includes bowsprit, pulpit, swim steps, dinghy, or any protrusion.

*Slip Fees are based upon the greater of vessel LOA or length of slip.

*Slip Fees are per foot, per month.

*Security Deposit equal to one-month rent must be maintained at all times.

**Click the link below to access the Lido Park Marina Packet.

Lido Park Place – Marina Packet

# EXHIBIT D

## LIDO PARK PLACE CONDOMINIUM ASSOCIATION
### C/O Boyd Management
25422 Trabuco Road, Suite #105-537, Lake Forest, CA 92630
(949) 215-8485 (office)   (949) 215-9040 (fax)

January 14, 2024

Steve Kuzmyak
3505 1/2 Finley Avenue
Newport Beach CA 92663

Property: **B712-10006-05**

## MOORING AGREEMENT AND PAYMENT NOTICE

Dear Mr. Kuzmyak:

Please note that we are again showing a past due balance on your Association slip account. The Board of Directors has determined to **terminate your Mooring Agreement** due to the consistently delinquent account.

We must now request that you pay the outstanding balance IN FULL and vacate the slip as of January 31, 2024. Should you not comply with this request, the account will be turned over to the Association's attorney for collection.

| | Current History | | |
|---|---|---|---|
| **Date** | **Amount** | **Reference** | **Running Balance** |
| 11/01/23 | 1,800.00 | Boat slip lease | 1,800.00 |
| 12/01/23 | 1,800.00 | Boat slip lease | 3,600.00 |
| 01/01/24 | 1,800.00 | Boat slip lease | 5,400.00 |
| | | Ending Balance | 5,400.00 |

If you should have any questions, please direct your **written correspondence** to the Board at the address above or via email to debbie@boydmanagement.org. Thank you for your immediate attention to this matter.

Sincerely,
On Behalf of The Board of Directors
LIDO PARK PLACE

Debbie Boyd, CCAM
Senior Association Manager